UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SYDNEY NURSE,

                       Plaintiff,

        v.

CONCEPTS IN STAFFING, INC. and ARTHUR
ABRAMS in his individual and official capacities,

                    Defendants.

------------------------------------------------------------X

06-CV-13500 (LAK)

**AMENDED
COMPLAINT**

<u>Jury Trial</u>
<u>Demanded</u>

Plaintiff Sydney Nurse ("Plaintiff" or "Ms. Nurse"), by and through her

undersigned counsel, as and for her Amended Complaint in this action against

Defendants Concepts in Staffing, Inc. ("CIS" or the "Company") and Arthur Abrams

("Defendant Abrams") (together, "Defendants"), hereby alleges as follows:

## <u>NATURE OF THE CLAIMS</u>

    1.    This is an action for declaratory, injunctive and equitable relief, as well as

monetary damages, to redress Defendants' unlawful employment practices, including

their unlawful discrimination, harassment and retaliation against Plaintiff in violation of

Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the New

York State Human Rights Law, New York Executive Law §§ 290 et seq., and the New

York City Human Rights Law, New York Administrative Code §§ 8-101 et seq.

    2.    Over the course of Plaintiff's nine year employment history at CIS,

Defendants repeatedly subjected Plaintiff to unlawful discrimination and harassment

because of her sex and because of her race and/or color, as well as to unlawful retaliation.

The blatantly hostile work environment at CIS includes the frequent use by the

Company's executives of racially derogatory expressions, such as referring to Plaintiff as "Black Bitch" and "Black Girl," as well as discriminatory comments like "you minorities should suffer" and Black and Hispanic employees should be segregated in the office location equivalent of "sitting in the back of the bus."

3.     The CIS workplace is also permeated with sexual harassment, including outright groping, genital gestures, and comments about female employees' breasts.  Ms. Nurse repeatedly complained about this and other racial and sexual misconduct at CIS and in return has been subjected to unlawful retaliation designed to punish her for bringing these claims and pressure her to withdraw them.

4.     Defendants' conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, permanent harm to her professional and personal reputation, and severe mental anguish and emotional distress.

## **JURISDICTION AND VENUE**

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981 and Title VII.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

7.     Plaintiff Sydney Nurse is an African-American/Black woman who currently resides in Staten Island in the State of New York.  At all relevant times, she met the definition of an "employee" under all applicable statutes.

8.     Defendant Concepts in Staffing, Inc. is principally engaged in the business of providing executive search, contract consulting, and interim staffing services to corporations.  The Company is organized and doing business under the laws of the State of New York with its principal place of business located at 9 East 37th St., 2FL, New York, NY 10016.  At all relevant times, Defendant CIS has met the definition of an "employer" under all applicable statutes.

9.     Defendant Arthur Abrams is a Caucasian/White male who, upon information and belief, resides in the State of New York, Nassau County.  At all relevant times, he was the President and General Manager of Concepts in Staffing, Inc., in which capacity he participated directly in the unlawful discrimination, harassment and retaliation against Plaintiff.

## PROCEDURAL REQUIREMENTS

10.     On or about August 22, 2006, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII").  The charge arises out of the same facts alleged herein.

11.     On or about May 14, 2007, Plaintiff received her Notice of Right to Sue from the EEOC.  This action has been filed within 90 days of Plaintiff's receipt of her Notice of Right to Sue from the EEOC.

12.     Prior to the commencement of this action, a copy of this Complaint was served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

13.     Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

### Sydney Nurse's Long Career at CIS

14.     Ms. Nurse began working for CIS as an Accounting Coordinator in or around February 1997.  She was thereafter promoted to Accounting Manager in 1999 and Controller of the Company in 2000 -- the position she holds to this day.  In more than nine years of employment at CIS, Ms. Nurse has performed and continues to perform her job in an exemplary manner, compiling an outstanding performance record.

15.     In recognition of her outstanding performance, Ms. Nurse has become the head of the entire accounting and administrative functions of CIS.  In this role, she is indispensable to the Company's on-going operations, including by managing the entire payroll department as well as independent and outside contractors, managing and training the accounting and administrative employees, reviewing and approving all sales contracts, as well as responsibility for office/operations management, collections, cash management, and overseeing the IT infastructure.  Ms. Nurse's high-level position also includes managing a staff of approximately 8 employees.

16.     As a result of her extensive responsibilities, Ms. Nurse routinely works long hours, staying at the office late into the evenings and on weekends to complete both business and personal tasks for the President of CIS, Defendant Abrams.  In fact, Ms.

4

Nurse consistently showed her unwavering dedication to the Company and Defendant Abrams by performing many tasks above and beyond the call of duty.  For example, Ms. Nurse assisted Defendant Abrams with his personal finances and schedule.

17.     In recognition of her achievements, Ms. Nurse not only received two promotions to occupy the highest position in her department, but she has also received regular annual bonuses and frequent praise from CIS's top executives and business partners.  As just one example, even after Ms. Nurse filed her racial and sexual discrimination charges, Defendant Abrams  -- although furious and unabashedly retaliating against her -- had to admit that he could not make one negative comment about her performance, which is "exemplary."

18.     Thus, at all times, Ms. Nurse has handled her job with the highest degree of professionalism, capability and ethical integrity.

19.     Despite this high level of performance and dedication, she has been subjected to a continuing pattern of discrimination and harassment based on her race, color and gender, including by CIS's President, Defendant Abrams, as well as other CIS male employees.

**Severe and Pervasive Racial Harassment**

20.     There is a hostile work environment at CIS in which African-American/Black and Hispanic employees are subjected to racial discrimination at the hands of its top executive, Defendant Abrams, as well as other employees emboldened by an atmosphere that tolerates open use of offensive, racially-derogatory language.

21.     For example, Defendant Abrams referred to Ms. Nurse as "Black Girl." Mr. Klein, a former senior sales representative at CIS and close friend of Defendant

5

Abrams, echoed this sentiment, calling Ms. Nurse "Black Bitch." In fact, Mr. Klein would shout this as a derisive "greeting" to her from across the room, so that her colleagues, including her staff, would hear Ms. Nurse being addressed in this offensive and humiliating manner.

22.     In addition to these derogatory and offensive statements, Defendant Abrams informed Ms. Nurse that he "does not want any Blacks or Hispanics pictured on [the CIS] website," and, while banging his hand on his desk, specifically warned Ms. Nurse not to put any pictures of "Blacks or Hispanics" on the website.

23.     Similarly, Defendant Abrams instructed a female Hispanic receptionist to assign a new Hispanic employee to a desk "in the Black and Hispanic section [of the office] like in the back of the bus." Defendant Abrams then erupted in laughter as he specifically directed the receptionist to repeat his patently racist comment to Ms. Nurse.

24.     Defendant Abrams has also stated to the African-American/Black employees at the office that "You are from the hood," and told them that "they all come from poverty."

25.     Defendant Abrams would also routinely parade his Hispanic or African-American/Black employees in front of job applicants of the same race or ethnicity. In doing so, he would make a point to note the applicant's racial or ethnic identity, introducing the applicant as a "black man" or "Dominican woman." Often in these introductions he would add racist assumptions about the minority applicant's background, for example, suggesting African-American/Black applicants were looking for a job to try to get out of poverty.

6

26.     As another example, Defendant Abrams told an employee who was sent to purchase a doll for his granddaughter – "make sure you don't get a black doll . . . anything is better then a black doll."

27.     In addition, most of the African-American/Black and Hispanic employees were employed in the less-highly paid administration area, and were hired by Ms. Nurse, compared to the sales area, where the employees, hired by Defendant Abrams, were overwhelmingly Caucasian/White.  Upon information and belief, those few African-American/Black or Hispanic sales persons whom Defendant Abrams did hire were paid significantly less than the mostly all-white sales staff.  In fact, when an English sales representative of African descent approached Defendant Abrams concerning a raise, he told her that "she was there to discuss her contract because it must be difficult coming from poverty."

28.     Other employees at CIS felt free to engage in similarly racist behavior and comments.  As just one example, when the accounting computer system crashed, an employee stated that, as a result, the group – which is African-American/Black and/or Hispanic – was suffering.  In response, a sale representative stated "you minorities are supposed to suffer."

29.     This racial harassment is unwelcome, severe and pervasive and created an offensive, hostile work environment for Sydney Nurse.  Ms. Nurse repeatedly complained internally and asked Defendants to cease their abusive, discriminatory conduct, to no avail.

### Severe and Pervasive Sexual Harassment

30.    In addition to his ongoing racial harassment, on repeated occasions, Defendant Abrams made unwanted sexual advances towards Ms. Nurse, including but not limited to, propositioning her, commenting on the appearance of her breasts, and touching and leering at her body.  Defendant Abrams has engaged in this conduct even in the plain view of Stuart Burton, the Vice President of CIS, openly rubbing up and down her arm and touching her breasts in front of him.

31.    Ms. Nurse repeatedly told Defendant Abrams to cease this highly offensive and inappropriate conduct, to no avail.

32.    Ms. Nurse is not alone in suffering this unwelcome and offensive treatment.  Many other women in the office have been subjected to comments and groping by Defendant Abrams and others.  For example, on one occasion, Ms. Nurse walked into Defendant Abrams' office to find that he had one female from her department cornered, pressed against the wall trying to avoid Defendant Abrams' unwanted advances.  The co-worker, relieved at being rescued from the situation, explained to Ms. Nurse that, in fact, Defendant Abrams had aggressively propositioned her.

33.    Mr. Abrams' conduct in this regard, as President and General Manager of the Company, has created a hostile work environment in which other male CIS employees have felt free to engage in similar unlawful sexual harassment, including but not limited to, physically groping female employees, making obscene gestures, openly leering at female staff, as well as making frequent, offensive, sexual and racist remarks.

8

34.     For example, on one occasion while Ms. Nurse was seated working at her desk, Mr. Klein approached her desk and rubbed a check request form on his genital area while pumping his pelvic area near Ms. Nurse's face.  When Ms. Nurse complained about this degrading and humiliating conduct to Defendant Abrams, he proceeded to laugh in her face.  As set forth below, Ms. Nurse pursued a complaint against Mr. Klein for this unlawful conduct, which resulted in retaliation and retribution against her by Defendant Abrams.

35.     Mr. Klein's behavior toward Ms. Nurse was not the first time that he had engaged in inappropriate sexual misconduct in the office.  Mr. Klein would frequently enter the accounting area and blatantly leer at Ms. Nurse and her female co-workers, making excuses to lean over their desks and stare at their breasts.  Mr. Klein would also make frequent comments such as "your top is nice, and the shirt looks good too," alluding to how the female employees' breasts looked.

36.     Other employees at CIS engaged in similar acts of sexual harassment.  For example, a sales representative, upon receiving a generous commission check from Ms. Nurse, exclaimed "I'm so happy I could kiss you," and then proceeded to unzip his pants, point to his genital area and state: "here kiss this!"  Ms. Nurse reported the incident to Defendant Abrams, who, again, simply laughed at it and took no further action to reprimand the offender or address the issue.

37.     This sexual harassment by Defendants is unwelcome, severe and pervasive and created an offensive, hostile work environment for Sydney Nurse.  Ms. Nurse repeatedly complained and asked Defendant Abrams to cease his own abusive conduct

and to address the improper conduct of other employees at CIS. In response, as set forth below, Defendant Abrams retaliated against her.

## Retaliation Against Sydney Nurse for Reporting Racial and Sexual Harassment

38.    Throughout the course of her employment, Ms. Nurse complained repeatedly to Defendant Abrams and other employees that their sexual harassment and patently racist comments were offensive, demeaning and hurtful, and requested that they stop engaging in this unwelcome conduct.

39.    Specifically, in August 2005, Ms. Nurse complained to Defendant Abrams concerning his comments about excluding African-American/Black and Hispanic employees from the CIS website. In response, Defendant Abrams laughed. He further denied saying this, and claimed that if he had said such a thing, it was only a joke. Ms. Nurse then asked Defendant Abrams to invite a colleague, Jeff Altman, who was present when the comments were made, to confirm them. Mr. Altman did so. Defendant Abrams continued to dismiss the issue, stating that even if he did say it, there would be no apology – it was his Company and he can do what he wants.

40.    Defendant Abrams later, on several occasions, reiterated to Ms. Nurse that I "still do not want blacks on my website," and laughed at her. In response to Ms. Nurse's continued protests, Mr. Abrams explained – "That's who I am and I'm never going to change." Defendant Abrams concluded that Ms. Nurse should simply stop being so "sensitive."

41.    Ms. Nurse also specifically complained to Defendant Abrams concerning the dramatically obscene behavior by Mr. Klein in rubbing on his crotch a check that he was about to hand to Ms. Nurse. Defendant Abrams' response was to laugh. When Ms.

Nurse insisted that Mr. Klein's conduct was offensive and warranted discipline, Defendant Abrams admonished her that "I hope you don't think I am going to fire him... he's a producer." Defendant Abrams, noting Ms. Nurse was upset at his refusal to act, stated, "get over it." "I can laugh, it's my place"

42.     Frustrated in her attempts to address the pervasive an unceasingly hostile environment in which she worked, Ms. Nurse thereafter brought her complaints to third parties whom she hoped could help with the situation. Specifically, on July 6, 2006, Ms. Nurse contacted Federal Insurance Company ("Federal"), the company that carries the CIS Employment Practices Liability Insurance. Ms. Nurse directly filed a claim on the policy based upon the incident with Mr. Klein described above.

43.     When Federal informed Defendant Abrams about the claim, he immediately retaliated against Ms. Nurse by threatening to terminate her. Defendant Abrams summoned Ms. Nurse into his office and demanded that she withdraw her claim, stating that she could not continue to work at CIS if she was suing him or the Company.

44.     Thereafter, apparently chastened by his insurer, Defendant Abrams relented to its directive to terminate Mr. Klein, and admitted to Ms. Nurse that he was advised that he was not allowed to threaten or fire her for filing the claim. In fact, Defendant Abrams admitted that he could not fire her for poor performance because her work is "impeccable."

45.     The instructions from his insurer, however, were not sufficient to stop Defendant Abrams' retaliation and ongoing discrimination.

46.     In retaliation for Ms. Nurse's complaints of racial and sexual harassment, Defendant Abrams deliberately set out to increase her workload. Specifically, in August

11

2006 -- just weeks after her complaint to Federal -- Defendant Abrams issued a written statement to the entirety of Ms. Nurse's staff -- the majority of whom are African-American/Black and/or Hispanic -- declaring that no further overtime work would be permitted in her department. The memo specifically stated that employees would not be paid for any overtime hours and that they would receive "comp time" instead.

47.     The effect of this retaliatory edict has been to significantly increase Ms. Nurse's already substantial workload, as well as deprive the primarily minority employee group of substantial earnings in retaliation for Ms. Nurse's complaints of discrimination. As noted above, Ms. Nurse manages the entire accounting and administrative function of the office and the reduction of staff hours inhibited her ability to delegate assignments and the myriad tasks for which she is responsible.

**Ms. Nurse Files an EEOC Charge, Sends Demand Letter and is Subjected to Further Retaliatory Conduct**

48.     In light of this ongoing misconduct of Defendants CIS and Abrams, on August 22, 2006, Ms. Nurse filed a Charge of Discrimination with the Equal Employment Opportunity Commission. Ms. Nurse also sought the assistance of counsel, and on September 15, 2006, her attorneys sent a letter to Defendant Abrams demanding that he and CIS cease the discriminatory harassment and retaliatory treatment toward her.

49.     Defendant Abrams again retaliated against Ms. Nurse for continuing to pursue her complaints and claims. Angered over being confronted with his wrongful behavior, Defendant Abrams berated Ms. Nurse for having raised a complaint, proclaiming that it was his Company and he could do what he wanted.

50.     In addition, on a daily basis, Defendant Abrams improperly attempted to instigate a confrontation with Ms. Nurse by making such taunting statements as "you're

suing me, but I can still say what I want to say." Defendant Abrams also made a point to continue using racially derogatory statements to or in front of Ms. Nurse, including informing her that he could still call her "Black Girl."

51.     This retaliatory harassment is particularly egregious given Ms. Nurse's ongoing cardiac symptoms, of which Defendant Abrams is aware and which have been exacerbated by the stress of his continuing unlawful misconduct.

52.     Despite the challenges raised by Defendants' ongoing retaliatory behavior, Ms. Nurse continues to persevere, working there everyday, putting in very long hours to fulfill her duties, as the dedicated and loyal employee she has always been.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Discrimination and Harassment in Violation of Section 1981)

53.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 52, inclusive, as if fully set forth herein.

54.     Defendants have discriminated against Plaintiff on the basis of her Race and/or Color (African-American/Black) in violation of Section 1981 by denying her the same terms and conditions of employment available to employees who are not African-American/Black, including but not limited to, subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free of unlawful harassment.

55.     Defendants have discriminated against Plaintiff on the basis of her Race and/or Color (African-American/Black) in violation of Section 1981 by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile

work environment that included, among other things, severe and pervasive racial harassment of Plaintiff by her direct supervisor and others.

56.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

57.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

58.     Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Retaliation in Violation of Section 1981)

59.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 58, inclusive, as if fully set forth herein.

60.     Defendants have retaliated against Plaintiff by, inter alia, threatening to terminate her employment, increasing her workload, penalizing the employees who report to her with the loss of overtime earnings and verbally abusing and harassing her, all in violation of Section 1981 for her opposition to discriminatory practices directed toward herself and other African-American/Black and/or Hispanic employees, and/or her

14

participation in lodging complaints about such discriminatory practices toward herself and other African-American/Black and/or Hispanic employees.

61.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

62.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

63.    Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR A THIRD CAUSE OF ACTION

### (Discrimination and Harassment in Violation of Title VII)

64.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 63, inclusive, as if fully set forth herein.

65.    Defendant CIS has discriminated against Plaintiff on the basis of her sex and on the basis of her race/color in violation of Title VII by denying to her equal terms and conditions of employment, including but not limited to subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free of unlawful harassment.

66.     Defendant CIS has discriminated against Plaintiff on the basis of her sex and on the basis of her race/color, in violation of Title VII by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff.

67.     As a direct and proximate result of Defendant CIS's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

68.     As a direct and proximate result of Defendant CIS's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

69.     Defendant CIS's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Retaliation in Violation of Title VII)

70.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 69, inclusive, as if fully set forth herein.

71.     Defendant CIS has retaliated against Plaintiff in violation of Title VII for her opposition to discriminatory practices directed toward herself and other female, African-American/Black and/or Hispanic employees, and/or her participation in lodging complaints about such discriminatory practices toward herself and other female, African-American/Black and/or Hispanic employees.

72.     As a direct and proximate result of Defendant CIS's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

73.     As a direct and proximate result of Defendant CIS's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

74.     Defendant CIS's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Discrimination and Harassment in Violation of
### New York State Human Rights Law)

75.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 74, inclusive, as if fully set forth herein.

76.     Defendants have discriminated against Plaintiff on the basis of her sex and on the basis of her race/color in violation of the New York State Human Rights Law by denying to her the equal terms and conditions of employment, including but not limited to subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free of unlawful harassment.

77.     Defendants have discriminated against Plaintiff on the basis of her sex and on the basis of her race/color, in violation of the New York State Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff.

78.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

79.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem

and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Retaliation in Violation of New York State Human Rights Law)

80.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 79, inclusive, as if fully set forth herein.

81.     Defendants have retaliated against Plaintiff in violation of the New York State Human Rights Law for her opposition to discriminatory practices directed toward herself and other female, African-American/Black and/or Hispanic employees, and/or her participation in lodging complaints about such discriminatory practices toward herself and other female, African-American/Black and/or Hispanic employees.

82.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

83.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Aiding and Abetting Violations of
### New York State Human Rights Law)

84.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 83, inclusive, as if fully set forth herein.

85.     Defendant Abrams knowingly or recklessly aided and abetted the unlawful employment practices, discrimination and retaliation against Plaintiff in violation of the New York State Human Rights Law.

86.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

87.     As a direct and proximate result, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Discrimination and Harassment in Violation of
### New York City Human Rights Law)

88.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 87, inclusive, as if fully set forth herein.

89.     Defendants have discriminated against Plaintiff on the basis of her sex and on the basis of her race, in violation of the New York City Human Rights Law by denying her equal terms and conditions of employment and denying her the opportunity to work in a setting free of unlawful harassment.

90.     Defendants have discriminated against Plaintiff on the basis of her sex and on the basis of her race/color, in violation of the New York City Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff.

91.     As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

92.     As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

93.     Defendants' unlawful discriminatory actions and harassment constitute malicious, willful and wanton violations of New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A NINTH CAUSE OF ACTION

### (Retaliation in Violation of New York City Human Rights Law)

94.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 93, inclusive, as if fully set forth herein.

95.     Defendants have retaliated against Plaintiff in violation of the New York City Human Rights Law for her opposition to discriminatory practices directed toward herself and other female, African-American/Black and/or Hispanic employees, and/or her participation in lodging complaints about such discriminatory practices toward herself and other female, African-American/Black and/or Hispanic employees.

96.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

97.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

98.     Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A TENTH CAUSE OF ACTION

### (Aiding and Abetting in Violation of New York City Human Rights Law)

99.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 98, inclusive, as if fully set forth herein.

100.    Defendant Abrams knowingly or recklessly aided and abetted the unlawful employment practices, discrimination and retaliation against Plaintiff in violation of the New York City Human Rights Law.

101.    As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

102.    As a direct and proximate result, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

103.    Defendant Abrams' unlawful actions constitute malicious, willful and wanton violations of New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B.     An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.     An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory and retaliatory treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect her employment and personal life;

D.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

E.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

F.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

G.     An award of damages for any and all other monetary and/or non-monetary

losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

     H.     An award of punitive damages;

     I.     An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

     J.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York     Respectfully submitted,
        May 15, 2007

     THOMPSON WIGDOR & GILLY LLP

By: _____
     Scott Browning Gilly (SG-6861 )
     Kathryn J. Webber (KP-9576)

     350 Fifth Avenue, Suite 5720
     New York, NY 10118
     Telephone: (212) 239-9292
     Facsimile: (212) 239-9001

     COUNSEL FOR PLAINTIFF