**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
SYDNEY NURSE,                                          :
                                                       :
                                      Plaintiff,       :
                                                       :                06-CV-13500 (LAK)
                      v.                               :
                                                       :
CONCEPTS IN STAFFING, INC. and ARTHUR  :
ABRAMS in his individual and official capacities,  :
                                                       :
                                                       :
                                     Defendants.    :
-----------------------------------------------------------X


**SUPPLEMENTAL MEMORANDUM OF LAW**
**CONCERNING NEW YORK CITY HUMAN RIGHTS LAW**

Kenneth P. Thompson (KT-6026)
Scott B. Gilly (SG-6861)
Kathryn J. Webber (KW-9576)

THOMPSON WIGDOR & GILLY LLP
350 Fifth Avenue
Suite 5720
New York, New York 10118-0110
(212) 239-9292

Attorneys for Plaintiff

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .............................................................................................................2

    I.    The Restoration Act Compels The Application Of The "Shocks the

        Conscience Plus" Standard ...............................................................................2

        A.  Standards For Interpreting Local Law ....................................................2

        B.  The Text Of The Restoration Act Purports To Change The

            Standard For Court Review Of All Issues Under The NYCHRL...........................3

        C.  The Legislative History Confirms That The Restoration Act

            Intended To Alter The Standard Of Review For All Aspects Of

            The NYCHRL.................................................................................................4

        D.  The Text Of The NYCHRL Sets A Standard Of Review Favoring

            The Application Of "Shocks The Conscience" ......................................6

        E.  The Legislative Intent Supports The Application Of The Shocks

            The Conscience Standard.........................................................................8

    II    The Standard Of Review Of The New York City Human Rights

        Law Is Not Preempted .......................................................................................10

        A.  The NYCHRL Is Not Preempted By Federal Law ...............................10

        B.  The NYCHRL Is Not Preempted By State Law ...................................13

            1.   The New York State Legislature Did Not Intend To

               Preempt The Entire Field ...........................................................14

            2.   The NYCHRL Is Not Inconsistent With State Laws ................16

CONCLUSION...........................................................................................................19

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Baker v. Coughlin,*
    77 F.3d 12 (2d Cir. 1996)...............................................................11

*Bellido-Sullivan v. American International Group,*
    123 F. Supp. 2d 161 (S.D.N.Y. 2000)..............................................12

*Brady v. Wal-Mart Stores, Inc.,*
    455 F. Supp. 2d 157 (E.D.N.Y. 2006) ........................................16, 17

*Connecticut National Bank v. Germain,*
    503 U.S. 249, 112 S. Ct. 1146 (1992)................................................2

*Crosby v. National Foreign Trade Council,*
    530 U.S. 363, 120 S. Ct. 2288 (2000)..............................................12

*Cross v. N.Y. City Transit Authority,*
    417 F.3d 241 (2d Cir. 2005)......................................................10, 13

*Disabled in Action v. Hammons,*
    202 F.3d 110 (2d Cir. 2000)............................................................3

*Doe v. Pataki,*
    120 F.3d 1263 (2d Cir. 1997)..........................................................3

*Donovan v. Dewey,*
    452 U.S. 594, 101 S. Ct. 2534 (1980)..............................................3

*Duse v. IBM,*
    252 F.3d 151 (2d Cir. 2001)..........................................................15

*Fowler v. New York Transit Auth.,*
    No. 96 Civ. 6796 (JGK), 2001 WL 83228 (S.D.N.Y. Jan. 31, 2001)................7

*Gasperini v. Ctr. for Humanities,*
    518 U.S. 415, 116 S. Ct. 2211 (1996)....................................10, 13, 15

*Greenbaum v. Svenska Handelsbanken,*
    67 F.Supp.2d 228 (S.D.N.Y. 1999) ...........................................16, 17

*James v. FRB,*
    471 F. Supp. 2d 226 (S.D.N.Y. 2007)..............................................12

*Johnson v. Railway Express Agency, Inc.*,
    421 U.S. 454, 95 S. Ct. 1716 (1975)...................................................................12

*Magee v. U.S. Lines, Inc.*,
    976 F.2d 821 (2d Cir. 1992)........................................................................11

*McGrath v. Toys "R" Us, Inc.*,
    409 F.3d 513 (2d Cir. 2005)........................................................................10

*Ochei v. Coler/Goldwater Memorial Hospital*,
    450 F. Supp. 2d 275 (S.D.N.Y. 2006).............................................................6

*Owens v. Catholic Diocese of Jackson*,
    169 F. Supp. 2d 588 (D. Miss. 2001)..............................................................12

*Selmanovic v. NYSE Group, Inc.*,
    No. 06 cv 3046 (DAB), 2007 U.S. Dist. LEXIS 94963 (S.D.N.Y. Dec. 21, 2007).......6, 18

*Singleton v. City of New York*,
    496 F. Supp. 2d 390 (S.D.N.Y. 2007)........................................................10, 13

*Stordeur v. Computer Associates International*,
    995 F. Supp. 94 (E.D.N.Y. 1998) .................................................................12

*Tebbenhoff v. Elec. Data Sys. Corp.*,
    No. 02 CV 2932 (TPG), 2005 U.S. Dist. LEXIS 29874 (S.D.N.Y. Nov. 29, 2005) .........11

*United States v. Gayle*,
    No. 02 cv 1095, 2003 U.S. App. LEXIS 26673 (2d Cir. Aug. 27, 2003)...........................3

*Wahlstrom v. Metropolitan-North Commuter R.R.*,
    89 F. Supp. 2d 506 (S.D.N.Y. 2000)..............................................................14

## STATE CASES

*Cohen v. Board of Appeals*,
    297 A.D.2d 38, 746 N.Y.S.2d 506 (2d Dep't 2002)............................................14

*Consolidated Edison Co. v. Town of Red Hook*,
    60 N.Y.2d 99, 456 N.E.2d 487, 468 N.Y.S.2d 596 (N.Y. 1983).......................................14

*Farrugia v. N. Shore Univ. Hosp.*,
    820 N.Y.S.2d 718, 13 Misc. 3d 740 (N.Y. Sup. Ct. 2006)............................................6, 18

*Jordan v. Bates Adv. Holdings, Inc.*,
    816 N.Y.S.2d 310, 11 Misc. 3d 764 (N.Y. Sup. Ct. 2006)................................................17

*Levy v. City Comm'n on Human Rights*,
    85 N.Y.2d 740, 651 N.E.2d 1264, 628 N.Y.S.2d 245 (N.Y. 1995) ............................14, 17

*N.Y. State Club Association v. City of New York*,
    69 N.Y.2d 211, 505 N.E.2d 915, 513 N.Y.S.2d 349 (N.Y. 1987) ..............................13, 14

*New York City Transit Authority v. State Division of Human Rights*,
    78 N.Y.2d 207, 577 N.E.2d 40, 573 N.Y.S.2d 49 (N.Y. 1991) ...........................13, 16, 17

*Nyack v. Daytop Village, Inc.*,
    78 N.Y.2d 500, 583 N.E.2d 928, 577 N.Y.S.2d 215 (N.Y. 1991) ....................................14

*Sorrenti v. City of New York*,
    No. 02 cv 113037, 2007 NY Misc. LEXIS 6487 (N.Y. Sup. Ct. Aug. 16, 2007) .............18

*Vatore v. Commissioner of Consumer Affairs*,
    83 N.Y.2d 645, 634 N.E.2d 958, 612 N.Y.S.2d 357 (N.Y. 1994) ....................................14

## STATUTES AND RULES

42 U.S.C. § 2007e-7...........................................................................................................12

Local Civil Rights Restoration Act of 2005, L.L. 85/2005 (2005)....................................4

N.Y.C., Administrative Code § 8-130 (2007)...................................................................4

NY CPLR § 4111(d)-(f)...................................................................................................15

NY CPLR § 5501(c) .......................................................................................................15

## MISCELLANEOUS

Bettina Plevan, *Letter on Behalf of The Association of the Bar of the City of New York in Support of the Local Civil Rights Restoration Act* (Aug. 1, 2005),
http://www.antibiaslaw.com/BarAssociationLetter080105.pdf....................................3, 5

Craig Gurian, *A Return to Eyes on the Prize: Litigating Under the Restored Human Rights* Law, 33 Fordham Urban L. J. 255 (2006) ...................................................9, 10

*Report of the City Council Committee on General Welfare* (Aug. 17, 2005),
http://www.antibiaslaw.com/BarAssociationLetter080105.pdf.................................4, 8, 9

*Statement of the Brennan Center for Justice in Support of the Local Civil Rights Restoration Act*, at 5, 7 (July 8, 2005) http://www.antibiaslaw.com/
BrennanStatement070805.pdf.......................................................................................5, 8

*Testimony of Craig Gurian Regarding Into 22A, the Local Civil Rights Restoration Act Committee on General Welfare* (Apr. 14, 2005), http://www.antibiaslaw.com/CenterTestimony041405.pdf ........................................................5, 9

Plaintiff Sydney Nurse ("Plaintiff" or "Ms. Nurse") submits this memorandum of law in response to the Court's request for further briefing on the following issues: (1) Does the New York City Human Rights Law, as amended by NYC Local Law No. 85 (the "NYCHRL") purport to change the standard for court review of jury verdicts based on the NYCHRL for excessiveness and (2) assuming that it does, is the NYCHRL, to that extent, pre-empted by state or federal law.

## PRELIMINARY STATEMENT

In 2005, the New York City Council passed Local Law No. 85, titled the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"). As its name implies, one of the main purposes of the Restoration Act was to restore the NYCHRL as the most progressive civil rights law in the nation. To do so, the City Council drafted specific text directing courts to interpret the NYCHRL independently from similarly worded state and federal laws and to construe the statute according to the NYCHRL's purpose to assist victims of discrimination. Thus, the Restoration Act amended the text of the NYCHRL to add not just specific substantive provisions, but also an overall standard of review for the entire statute. In this manner, the Restoration Act does purport to change the standard of court review of jury verdicts, as it alters the standard of review for all aspects of the NYCHRL. As the text and legislative history of the Restoration Act further demonstrate, this standard is meant to be favorable to victims of discrimination, to ensure that they are fully compensated, and to treat federal and state laws as the minimum level of protection, not as a ceiling that confines the NYCHRL. Consequently, "shocks the conscience" is the minimum standard of review here.

In addition, neither federal nor state law preempts a more deferential standard of review for jury awards under the NYCHRL. Under established principles of pendent jurisdiction,

federal courts apply the standard of jury review of the underlying local law; there is no preemptive federal standard of review that controls.  Moreover, both Title VII and Section 1981 permit more stringent state and local laws and were never intended to prevent different, more favorable, standards for the laws of these jurisdictions.  Similarly, courts universally recognize that the New York State Human Rights Law does not preempt a more favorable city counterpart.  Nor does Rule 5501 of the New York Civil Practice Law and Rules (the "CPLR") have preemptive effect here.  As described below, the New York State legislature did not intent to preempt the entire field of review of jury verdicts because CPLR 5501, by its clear textual language, is limited in scope to tort claims, personal injury and malpractice claims in particular. In fact, in light of the statutory limitations, CPLR 5501 does not even apply to employment discrimination claims, and consequently does not preempt the NYCHRL's deferential standard of review.  Thus, the New York Court of Appeals did not feel constrained by CPLR 5501 and crafted a different standard of review for jury awards under the state discrimination law.  For all these reasons, the deferential standard of review for jury awards under the NYCHRL is the controlling standard in this case.

## ARGUMENT

### I.
### THE RESTORATION ACT COMPELS THE APPLICATION OF THE "SHOCKS THE CONSCIENCE PLUS" STANDARD

**A.    Standards for Interpreting Local Law**

It is axiomatic that when interpreting the meaning of a state or local statute, a federal court first relies on the actual language of the statute at issue.  *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S. Ct. 1146, 1149-50 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute

what it says there"). As part of its examination of statutory language, courts will analyze the statutory preamble, if any, for guidance as to the legislature's meaning and intent with regards to statutory interpretation. *Doe v. Pataki*, 120 F.3d 1263, 1276 (2d Cir. 1997) (citing to preamble as evidence of legislative intent); *Donovan v. Dewey*, 452 U.S. 594, 602, 101 S. Ct. 2534, 2539-40 (1980) (determining Congressional intent by examining language in preamble of statute).

To the extent a statute is silent on an issue or is ambiguous, a court must rely upon the legislative intent. *See, e.g., United States v. Gayle*, No. 02 cv 1095, 2003 U.S. App. LEXIS 26673 at *12-13 (2d Cir. Aug. 27, 2003) ("Resort to authoritative legislative history may be justified where there is an open question as to the meaning of a word or phrase in a statute, or where a statute is silent on an issue of fundamental importance to its correct application").[1] The most commonly consulted sources of legislative history include conference committee reports, sponsor/floor manager statements, and floor or hearing colloquy, with the committee reports representing "the most persuasive evidence" of intent. *Disabled in Action v. Hammons*, 202 F.3d 110, 124 (2d Cir. 2000).

**B.     The Text Of The Restoration Act Purports To Change The Standard For Court Review Of All Issues Under the NYCHRL**

In one of its more powerful statutory amendments, the Restoration Act inserted specific interpretation and construction guidelines into the text of the NYCHRL. The Restoration Act added the highlighted language to Section 8-130 of the text of the NYCHRL:

> Construction. The provisions of this *title* shall be construed liberally for the accomplishment of the *uniquely broad and remedial* purposes thereof, *regardless of whether federal or New York State civil and human rights laws, including those*

---

[1]      *See also* Bettina Plevan, *Letter on Behalf of The Association of the Bar of the City of New York in Support of the Local Civil Rights Restoration Act* at 2 (Aug. 1, 2005), http://www.antibiaslaw.com/BarAssociationLetter 080105.pdf ("Even where state or local legislation contains language that echoes federal law, principles of statutory interpretation require that courts examine whether the legislative body that enacted the local law intended that language to have the same meaning that has been ascribed to it in the federal context.")

3

*laws with provisions comparably-worded to provisions of this title, have been so construed.*

Local Civil Rights Restoration Act of 2005 § 7, L.L. 85/2005 (2005); N.Y.C. Administrative

Code § 8-130 (2007) (emphasis added). *See also Report of the City Council Committee on*

*General Welfare*, at 4 (Aug. 17, 2005), http://antibiaslaw.com/CommitteeReport081705.pdf (the

"Committee Report") ("Section 7 of the bill would amend § 8-130 of the administrative code

concerning construction of the human rights law").[2]  The Restoration Act's own statutory

language provides a further explanation of the purpose of this amendment, making it clear that it

was designed to affect the manner in which the judiciary interpreted the NYCHRL's provisions:

> The purpose of this local law . . . is to clarify the scope of New York City's Human Rights Law.  It is the sense of the Council that New York City's Human Rights Law has been construed too narrowly to ensure protection of the civil rights of all persons covered by the law.  In particular, through the passage of this local law, the Council seeks to underscore that the provisions of New York City's Human Rights Law *are to be construed independently* from similar or identical provisions of New York state or federal statutes.  *Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of the New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise.*

Local Civil Rights Restoration Act § 1 (emphasis added).  *See also* Committee Report at 4 (the

Restoration Act "expressly instructs decision makers assessing claims asserted under the City's

human rights law" on how to construe that statute).

## C.    The Legislative History Confirms That The Restoration Act Intended To Alter The Standard Of Review For All Aspects Of The NYCHRL

Although the Restoration Act also included a few specific amendments for certain subject

areas,[3] by also amending the statute to include broad principles of interpretation, the Restoration

---

[2]        A copy of the Restoration Act, Committee Report and other cited legislative history documents are attached as exhibits to the Declaration of Kathryn J. Webber in Response to Request for Supplemental Briefing, dated February 18, 2008, submitted herewith.

[3]        *See* Committee Report at 2-4 describing these amendments.

Act purports to change the courts' standard of review for <u>all</u> aspects of the NYCHRL.  *See* Committee Report at 4-5 (Restoration Act "expressly instructs decision makers" on how to construe NYCHRL and provides "clarifications regarding [the] *overall construction*" of the statute) (emphasis added);  *see generally Testimony of Craig Gurian Regarding Intro 22A, the Local Civil Rights Restoration Act Committee on General Welfare*, at 5 (Apr. 14, 2005), http://www.antibiaslaw.com/CenterTestimony041405.pdf ("Gurian Testimony") (describing Restoration Act's effect on interpretation of the NYCHRL as a whole).

Indeed, the legislative history explains that the Restoration Act deliberately avoided any other specific amendments, in order to have one broad statement of principles that would guide all issues going forward.  *See*, *e.g.*, Bettina Plevan, *Letter on Behalf of The Association of the Bar of the City of New York in Support of the Local Civil Rights Restoration Act* at 3, 5 (Aug. 1, 2005), http://www.antibiaslaw.com/BarAssociationLetter 080105.pdf ("City Bar Letter") (noting that although Restoration Act specifically addressed certain erroneous judicial interpretations of the NYCHRL, it also set forth general construction language "to avoid the need for such specific amendments in the future"); *Statement of the Brennan Center for Justice in Support of the Local Civil Rights Restoration Act*, at 5, 7 (July 8, 2005), http://www.antibiaslaw.com/ BrennanStatement070805.pdf ("Brennan Statement") (Restoration Act instructs judges on the overall interpretation and construction of the NYCHRL; its drafters specifically rejected more limited, issue specific approach).

Thus, the Restoration Act <u>does</u> purport to change the judicial standard of review of jury verdicts, because, as the statutory language and legislative history make clear, it changes the judicial standard of review for the entire statute.   To hold otherwise would mean that the City Council somehow intended to leave the single issue of the standard of review for jury awards

untouched, while it sought to expand the interpretation of the NYCHRL in every other respect. In fact, the statutory language and legislative history explicitly reject precisely what Defendants seek here, namely, a narrow construction of NYCHRL to conform its provisions to state law.

**D.    The Text Of The NYCHRL Sets A Standard Of Review Favoring The Application Of "Shocks The Conscience"**

As set forth above, the Restoration Act amended the "Construction" section of the NYCHRL (N.Y.C. Administrative Code § 8-130), to clarify that the NYCHRL is to be liberally construed, and interpreted independently from federal or New York State counterparts.  Local Civil Rights Restoration Act § 7.  The language of the Restoration Act explains that although federal and state interpretations of similarly worded statutes may be useful in construing the NYCHRL, such interpretations are to be viewed as the "floor below which the NYCHRL cannot fall, rather than a ceiling above which the NYCHRL cannot rise."  Local Civil Rights Restoration Act § 1; *see also* City Bar Letter at 4 (Restoration Act "requires courts to construe the City's Human Rights Law independently and in light of the Council's clear intent  to provide the greatest possible protection for civil rights").  Consequently, as recent decisions recognize, the NYCHRL is to be interpreted as providing broader protections to victims of discrimination than its federal and state counterparts.  *Selmanovic v. NYSE Group, Inc.*, No. 06 cv 3046 (DAB), 2007 U.S. Dist. LEXIS 94963 at *10-11 (S.D.N.Y. Dec. 21, 2007) ("the New York City Human Rights Law was intended to be more protective than the state and federal counterpart") (citing *Farrugia v. N. Shore Univ. Hosp.*, 820 N.Y.S.2d 718, 724, 13 Misc. 3d 740, 747 (N.Y. Sup. Ct. 2006)); *See also Ochei v. Coler/Goldwater Memorial Hospital,* 450 F.Supp.2d 275, 283 (S.D.N.Y. 2006) (finding that NYCHRL should be "liberally and independently construed" from state and federal human rights laws because of the higher standards imposed therein).

In applying this statutory text to the issue of judicial review of jury verdicts, it is clear that the "shocks the conscience" standard, at a minimum, should govern here because it is more favorable to victims of discrimination.  As set forth in detail in Plaintiff's opposition to the Defendants' motion under Federal Rules of Civil Procedure 50 and 59 (the "Rule 50/59 Motion"), New York State rule CPLR 5501 has been interpreted by some courts to require the application of the "deviates materially" standard.[4]  In contrast, federal law applies the "shocks the conscience" standard of review, which is generally understood to be the more favorable standard for victims of discrimination.  *See* Pl. Opp. at 23; *see also Fowler v. New York Transit Auth.*, No. 96 Civ. 6796 (JGK), 2001 WL 83228, at *10 (S.D.N.Y. Jan. 31, 2001) ("The 'deviates materially' standard for reviewing jury awards is less deferential to a jury verdict than the federal 'shocks the conscience' standard because it does not permit a reviewing court to sustain a damage award that is out of line with other awards for similar injuries . . .").  As set forth above, the text of the NYCHRL calls for the NYCHRL to be liberally construed, independently of state and federal law, and the text of the Restoration Act identifies comparable state and federal statutes as the floor below which the NYCHRL cannot fall.  Both of these statutory provisions mandate the selection of the more favorable "shocks the conscience" standard as a minimum level of deference to the jury's verdict.  It is simply inconsistent with the Restoration Act's clear statutory language to select a standard of review that is less favorable to a successful discrimination plaintiff than the available federal standard.  As set forth below, the legislative history of the Restoration Act also unequivocally supports this conclusion.

---

[4]      CPLR 5501(c).  As noted in Section II(B)(1) herein, there are some cases and arguments that the state standard under this provision is limited in application to personal injury cases and does not apply to employment discrimination actions.

**E.    The Legislative Intent Supports The Application Of The Shocks The Conscience Standard**

According to the City Council, the Restoration Act was intended to prevent courts from using restrictive interpretations of comparable federal and state law to limit or restrict a more liberal construction of the NYCHRL.  Committee Report at 5.  Thus, the provisions of the NYCHRL "may not be construed less liberally than interpretations of comparably worded federal and state laws." *Id.*   These mandates clearly support the use of the more favorable "shocks the conscience" standard.  To use "deviates materially" would construe the NYCHRL less liberally than the comparable federal law in contravention of demonstrated legislative intent.  Moreover, selecting the "deviates materially" standard would be contrary to the underlying purposes of the NYCHRL, because, as explained further below, one of the statute's clear purposes is to ensure full compensation to successful plaintiffs.  *See* Brennan Center Statement, at 9 (noting that the Restoration Act calls for a court to choose between alternate statutory interpretations and to do so with due regard for the underlying purposes of the law).

The legislative history demonstrates that one of the underlying purposes of the Restoration Act is to fully compensate victims of discrimination.  For example, in the Report of the City Council's Government Affairs Division and Committee on General Welfare in support of the Restoration Act, it states:

> Under the bill's provisions, a number of principles should guide decision-makers when they analyze claims asserting violations of rights protected under the City's human rights law: discrimination should not play a role in decisions made by employers, landlords and providers of public accommodations; traditional methods and principles of law enforcement ought to be applied in the civil rights context; and *victims of discrimination suffer serious injuries, for which they ought to receive full compensation.*

Committee Report at 5 (emphasis added).

Similarly, at the City Council hearing on the Restoration Act, one of the principal drafters of the law, Craig Gurian, testified that the bill would oblige a judge to consider certain specific principles in interpreting the NYCHRL, including the following with respect to damages: (a) "maximize the deterrent effect of the law," (b) "always compensate victims of discrimination fully" and (c) "treat discrimination injuries as serious injuries." Gurian Testimony at 5. Accordingly, as Mr. Gurian subsequently explained in a law review article, the Restoration Act expresses a clear policy mandate that "the genuine pain associated with discrimination claims should not be undervalued" and cautions "judges to defer more to a jury's consideration of the nature of the discrimination injury." *See* Craig Gurian, *A Return to Eyes on the Prize: Litigating Under the Restored Human Rights Law*, 33 Fordham Urban L. J. 255, 309-10 (2006).

Specific amendments contained in various sections of the Restoration Act further demonstrate that the City Council intended to afford plaintiffs victimized by discrimination the maximum damages available. For example, the Restoration Act more than doubled the civil penalties available when the City Division of Human Rights brings suit under the NYCHRL, recognizing that such penalties "send a strong signal to those who discriminate that such acts cause serious injury, to both the persons directly involved and the social fabric of the City as a whole, which will not be tolerated." Committee Report, at 6; Gurian, 33 Fordham Urban L. J. at 325. As Craig Gurian explains:

> The fact that the caps were more than doubled should also be a factor in
> restraining judges who might otherwise be inclined to reduce punitive damages
> awards in cases brought in court. A 250 percent increase in penalties
> administratively strongly suggests that it is actually the award of "inadequate
> penalties" that is the key problem about which courts need to worry. Likewise,
> the Council's emphasis on the societal injury caused by discrimination should
> make judges skeptical that punitive awards are excessive. Punitive damages can
> only meet the law's goals of punishment, individual deterrence, and general
> deterrence if they are sufficient to "sting"

Gurian, 33 Fordham Urban L. J. at 324-25.

Based on the foregoing analysis, it is evident that the standard espoused by New York State for reviewing compensatory damages, namely that such damages should be reduced if they "deviate materially" from other awards for similar injuries, is too restrictive in light of the clear legislative intent, and the more favorable standard under federal law is more appropriate.[5]

## II.

### The Standard Of Review Of The New York City Human Rights Law Is Not Preempted

#### A.    The NYCHRL Is Not Preempted By Federal Law

Although federal courts generally apply a "shocks the conscience" standard of review for jury awards under federal law, if an award is made under a state law claim that is before the court on either diversity or pendent jurisdiction, federal courts apply the state law's standard for excessiveness. *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 437, 116 S. Ct. 2211, 2224-25 (1996) (when New York State substantive law governs a claim for relief due to diversity jurisdiction, New York law and decisions guide the allowable damages); *Cross v. N.Y. City Transit Auth.*, 417 F.3d 241, 258 (2d Cir. 2005) (excessiveness of emotional distress damages awarded under state law evaluated according to state standards); *Singleton v. City of New York*, 496 F. Supp. 2d 390, 393 (S.D.N.Y. 2007) (attributing jury award to state law as most favorable and consequently assessing size of award under state standards).[6]  Courts similarly defer to the underling city law when interpreting city claims, including available remedies.  *See, e.g.*, *McGrath v. Toys "R" Us, Inc.*, 409 F.3d 513, 516 (2d Cir. 2005) (in assessing propriety of

---

[5]     We have found no decision that has considered the remedial intentions of the NYCHRL in determining the appropriate standard of review for jury decisions.  To the extent that any decisions previously applied the "deviates materially" standard to the NYCHRL without analyzing the purposes and intent of the NYCHRL, they simply cannot be held as binding precedent.  In contrast, this Court's application of the Restoration Act to require "shocks the conscience" review would be in accord with the language of the NYCHRL and its legislative history, both well established elements of statutory interpretation.

[6]     None of *Gasperini*, *Cross* or *Singleton* involved claims under the NYCHRL.

attorneys' fee award under NYCHRL, analyzing text of city statute and certifying question of interpretation of NYCHRL to New York Court of Appeals); *Tebbenhoff v. Elec. Data Sys. Corp.*, No. 02 CV 2932 (TPG), 2005 U.S. Dist. LEXIS 29874 at *14-15 (S.D.N.Y. Nov. 29, 2005) (analyzing text and case law under NYCHRL to determine issues of substantive interpretation, including extraterritorial application).

Thus, there is no preemptive federal standard of review for jury awards. To the contrary, established principles of pendent jurisdiction refer this Court to the underlying city law for the standards for evaluating a jury award under the NYCHRL. *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996). Indeed, Defendants' Rule 50/59 Motion concedes this general principle. Defendants correctly argue that the statute providing the greatest recovery governs the damage analysis, including the standards for determining whether the jury's verdict is excessive. *See* Def. Rule 50/59 Motion at 16. (*citing Magee v. U.S. Lines, Inc.*, 976 F.2d 821 (2d Cir. 1992)). Where Defendants err is in identifying the most favorable statute. Defendants assert the judgment must be attributed to New York State law, when in fact, the NYCHRL is clearly more favorable, not only because the NYCHRL has punitive damage remedies which the NYSHRL does not, but also because as set forth herein, the NYCHRL, as amended by the Restoration Act, applies a standard of review that is highly favorable to victims of discrimination. Under Defendants' own analysis, the NYCHRL, the statute providing the greatest recovery, governs the standard of review for the jury award in this case.

The fact that Plaintiff also brought claims and obtained a judgment under federal discrimination laws does not alter this result. Both Title VII and Section 1981 specifically contemplate the existence of state or local laws providing greater protections and damages and do not act to preempt the deferential standard of review under the NYCHRL.

Thus, Title VII expressly provides:

> Nothing in this subchapter shall be deemed to exempt or relieve any person from any *liability*, duty, *penalty*, or *punishment* provided by any present or future law of any State or *political subdivision of a State*, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

42 U.S.C. § 2007e-7 (emphasis added).  Congress did not intend to occupy the entire field of employment discrimination law through federal legislation.  Indeed, because Section 1981 is less comprehensive than Title VII, there is no doubt that it cannot have preemptive effect where Title VII does not.  *See*, *e.g.*, *Bellido-Sullivan v. American Int'l Group*, 123 F. Supp. 2d 161, 165 (S.D.N.Y. 2000) (holding that FMLA has no preemptive effect over state law because remedial scheme was less far-reaching than Title VII, which also had no preemptive effect); *see also Owens v. Catholic Diocese of Jackson*, 169 F. Supp. 2d 588, 593 (D. Miss. 2001) (holding that Section 1981 does not preempt state law claims).

This language makes evident that rather than seeking to preempt state or local laws so as to occupy the entire field of civil rights protections, Congress intended that federal anti-discrimination statutes would complement any laws drafted by states or cities that afforded greater protection.  *James v. FRB*, 471 F. Supp. 2d 226, 232 (S.D.N.Y. 2007) (*citing Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372, 120 S. Ct. 2288, 2293-94 (2000)) (Absent express statement of preemption, federal law will only preempt a local law where Congress intended federal law to exclusively "occupy the field" or where local law is in direct conflict with federal law and renders federal law inoperable); *Stordeur v. Computer Assocs. Int'l*, 995 F. Supp. 94, 100 (E.D.N.Y. 1998) (finding that Congress did not intend for Title VII to completely occupy field of employment discrimination) (*citing Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459, 95 S. Ct. 1716, 1719-20 (1975)).

**B.**    **The NYCHRL Is Not Preempted By State Law**

Having established that the Court must refer to the <u>city</u> law for the appropriate standard of review for excessiveness, it does not necessarily follow that the Court must also import CPLR 5501, which is a <u>state</u> law of limited application. For example, in those cases where a court turned to CPLR 5501 for the relevant standard of review, the court did so in order to interpret a state claim that was before it and did not decide whether CPLR 5501 applied to city claims. *See*, *e.g.*, *Gasperini*, 518 U.S. at 437, 116 S. Ct. at 2224-25; *Cross*, 417 F.3d at 258; *Singleton*, 496 F. Supp. 2d at 393. Under the principles of pendent jurisdiction, the NYCHRL's standard of review is controlling unless CPLR 5501 was somehow intended to preempt any local standard of review. As set forth below, CPLR 5501 does not have this preemptive effect here because, according to its text and legislative intent, the provision is directed only to jury awards in tort cases, specifically personal injury and medical malpractice. In fact, in *New York City Transit Auth. v. State Div. of Human Rights,* 78 N.Y.2d 207, 218-19, 577 N.E.2d 40, 41, 573 N.Y.S.2d 49, 55 (N.Y. 1991), the Court of Appeals felt free to disregard CPLR 5501 and set a different standard of review for employment discrimination awards under state law. Therefore, nothing in state law preempts this Court from relying on the text and legislative history of the NYCHRL to determine a standard of review that is more deferential than the "deviates materially" standard of CPLR 5501.

"The constitutional home rule provision confers broad police power upon local government relating to the welfare of its citizens." *N.Y. State Club Ass'n v. City of New York*, 69 N.Y.2d 211, 217, 505 N.E.2d 915, 917, 513 N.Y.S.2d 349, 351 (N.Y. 1987). This "broad police power" is limited by state law only in two circumstances: where the state legislature has a demonstrated intent to preempt the entire field, leaving no room for local governments to

legislate about the subject matter, or where the city law is inconsistent with constitutional or

general laws. *Id.* To determine whether a law promulgated by a state government is inconsistent

with the local law for purposes of preemption, courts look to two basic issues: whether the "local

laws prohibit what would have been permissible under State law or [the local laws] impose

prerequisite additional restrictions on rights under State law, so as to inhibit the operation of the

State's general laws." *Consol. Edison Co. v. Town of Red Hook*, 60 N.Y.2d 99, 108, 456 N.E.2d

487, 491, 468 N.Y.S.2d 596, 600-01 (N.Y. 1983) (internal citations and quotations omitted). In

the instant case, it is clear that CPLR 5501 was not intended to preempt the entire field, and in

fact, is not inconsistent with a broader standard of review under the NYCHRL.

### 1. The New York State Legislature Did Not Intend To Preempt The Entire Field

The legislature's intent to preempt an entire field "can be inferred from a declaration of

policy or from a comprehensive or detailed scheme in a given area." *Cohen v. Bd. of Appeals*,

297 A.D.2d 38, 43, 746 N.Y.S.2d 506, 509 (2d Dep't 2002) (*citing Nyack v. Daytop Village,

Inc.*, 78 N.Y.2d 500, 505, 583 N.E.2d 928, 930, 577 N.Y.S.2d 215, 217 (N.Y. 1991)); *see also

Vatore v. Commissioner of Consumer Affairs*, 83 N.Y.2d 645, 650, 634 N.E.2d 958, 960, 612

N.Y.S.2d 357, 359 (N.Y. 1994) ("Preemptive intent, however, may be inferred from the nature of

the subject matter being regulated and the purpose and scope of the State legislative scheme").

Courts have consistently recognized that the New York State legislature did not intend to occupy

the entire field of employment discrimination, leaving open the potential for a more deferential

standard of review under the NYCHRL. *See, e.g., Wahlstrom v. Metro-North Commuter R.R.*,

89 F. Supp. 2d 506, 527 (S.D.N.Y. 2000) (holding that "the Legislature has not preempted the

area of human rights because it has expressly recognized the concurrent jurisdiction of the City

Commission on Human Rights with respect to matters in New York City") (*citing Levy v. City*

14

*Comm'n on Human Rights*, 85 N.Y.2d 740, 743, 651 N.E.2d 1264, 1266, 628 N.Y.S.2d 245, 247 (N.Y. 1995)).

Moreover, the state legislature did not intend for CPLR 5501 to preempt the entire field regarding the standard of review for damage awards. In the first instance, CPLR 5501 is not a comprehensive scheme, but instead is limited to torts - malpractice and personal injury torts in particular - as demonstrated by both the text of CPLR 5501 and its legislative history. *See*, *e.g.*, *Gasperini*, 518 U.S. at 423, 116 S. Ct. at 2217 (In enacting CPLR 5501, "[t]he legislature sought, particularly, to curtail medical and dental malpractice, and to contain "already high malpractice premiums.") The text of CPLR 5501 addresses these torts specifically by referencing CPLR 4111. Section 5501 states that,

> [i]n reviewing a money judgment in an action in which *an itemized verdict is required by rule forty-one hundred eleven* of this chapter in which it is contended that the award is excessive or inadequate and that a new trial should have been granted . . . an award is excessive or inadequate if it deviates materially from what would be reasonable compensation."

CPLR § 5501(c) (emphasis added). In turn, CPLR Section 4111 only requires an itemized verdict for "medical, dental or podiatric malpractice actions," actions "against a public employer for personal injury or wrongful death," or actions "to recover damages for personal injury, injury to property or wrongful death." CPLR § 4111(d)-(f). *See also Gasperini*, 518 U.S. at 424, 116 S. Ct. at 2218 (noting statute's intent to promote greater stability in the *tort* system). Thus, this tailored provision is not a comprehensive scheme that would preempt the entire field of the standard of review for jury awards.

In fact, given its limitation to torts, CPLR 5501 does not even apply to employment discrimination cases, let alone preempt the entire field. *See Duse v. IBM*, 252 F.3d 151, 161 (2d Cir. 2001) (holding that employment discrimination damages for emotional distress do not

constitute personal injuries insofar as personal injuries must arise from tort-type claims); *see also Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 190 (E.D.N.Y. 2006) (detailed analysis of the coverage of CPLR 4111, concluding it did not apply to employment discrimination cases). As a result, as set forth in more detail below, the New York Court of Appeals disregarded CPLR 5501 and applied a different standard of review for jury awards under the state human rights law. *New York City Transit Auth.,* 78 N.Y.2d at 218-19, 577 N.E.2d at 41, 573 N.Y.S.2d at 55.  In this manner, the proposed NYCHRL standard of "shocks the conscience plus" is not inconsistent with CPLR 5501 for purposes of preemption.

### 2.  The NYCHRL Is Not Inconsistent With State Laws

A number of courts agree that due to CPLR 5501's explicit reference to CPLR 4111, which is limited to torts and personal injury/medical malpractice torts in particular, CPLR 5501 is also limited to torts and does not apply to claims of employment discrimination.  *See*, *e.g.*, *Brady*, 455 F. Supp. 2d at 190 (rejecting "deviates materially" standard because Section 4111 does not require itemized verdict in employment discrimination action); *Greenbaum v. Svenska Handelsbanken*, 67 F.Supp.2d 228, 266 (S.D.N.Y. 1999) (in a Title VII discrimination case, holding that §5501(c) is not applicable to punitive damages because §5501, "by its express terms only applies to itemized verdicts awarded under Section 4111").  Under this authority, the standard of review under the NYCHRL is not inconsistent with CPLR 5501 because the two statutes address different types of claims.

As the court noted in *Brady*, despite the above-described textual limitations, a number of federal courts have nonetheless applied CPLR 5501 to employment discrimination cases.  455 F. Supp.2d at 157 (citing cases).  The *Brady* court convincingly distinguished this authority on the basis that none of the cases addressed or examined in any way the express limiting language in

16

4111. *Id.* at 194-95. Moreover, the *Brady* court further noted that New York State's highest court did not treat CPLR 5501 as the governing standard for reviewing awards in employment discrimination cases. *Id*. at 191-92 (*citing New York City Transit Auth. v. State Div. of Human Rights,* 78 N.Y.2d 207, 577 N.E.2d 40, 573 N.Y.S.2d 49 (N.Y. 1991)). In *Transit Authority*, which made no reference to CPLR 5501 at all, the Court of Appeals described the standard of review of jury verdicts under the New York State Human Rights Law as having three components: "(1) the existence of a compensable mental injury reasonably related to the wrongdoing, (2) whether the award was supported by some evidence of the magnitude of the injury, and (3) how the award compared with other awards for similar injuries." 455 F. Supp.2d at 192 (*citing New York City Transit Auth.,* 78 N.Y.2d at 216-19, 577 N.E.2d at 41, 573 N.Y.S.2d at 54-56). This tri-part standard obviously differs from the "deviates materially," language of CPLR 5501. For purposes of analyzing whether CPLR 5501 preempts NYCHRL as a matter of state law, the Court of Appeals' treatment of the issue is controlling.[7]

The *Transit Authority* standard itself does not bar a more deferential standard under the NYCHRL. The *Transit Authority* standard was derived from the particular policies of the <u>state</u> human rights law, which as set forth above, has been expressly found <u>not</u> to preempt the NYCHRL. *New York City Transit Auth.*, 78 N.Y.2d at 216-19, 577 N.E.2d at 41, 573 N.Y.S.2d at 54-56; *Levy*, 85 N.Y.2d at 743, 651 N.E.2d at 1266, 628 N.Y.S.2d at 247. In fact, a number of courts have upheld more stringent city discrimination laws, even where they conflicted with similarly worded state law provisions. *See  Jordan v. Bates Adv. Holdings, Inc.*, 816 N.Y.S.2d 310, 317, 11 Misc. 3d 764, 770 (N.Y. Sup. Ct. 2006) (holding that "in enacting the more

---

[7]      In *Gasperini*, 518 U.S. at 437, 116 S. Ct. at 2224-25, the Supreme Court applied the *Erie* doctrine to determine that CPLR  5501 governed a federal district court's review of a New York State human rights claim before it on diversity. The Court did not decide, however, whether as a matter of state law, CPLR 5501 is in fact inconsistent with a broader standard of review for civil rights claims, so as to preempt a more deferential standard by local jurisdictions.

protective Human Rights Law, the New York City Council has exercised a clear policy choice which this court *is bound to honor*") (emphasis added).  For example, in *Selmanovic*, 2007 U.S. Dist. LEXIS 94963, the defendants argued that the actions they took did not constitute materially adverse employment actions sufficient to support a cause of action for retaliation.  *Id*. at *19. The court began by citing to the NYCHRL, which, as amended by the Restoration Act, stated that, "any retaliation or discrimination 'need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment.'" *Id*. at *17-18.  Accordingly, the court held that although the actions the plaintiff alleged "would likely be inadequate to support a retaliation claim under Title VII or under the New York State Human Rights Law," they were sufficient to support a retaliation claim under, "the more liberal provisions of the New York City Human Rights Law."  *Id*. at *20.

Similarly, in *Farrugia*, 820 N.Y.S.2d 718, 13 Misc. 3d 740, a hostile work environment case, the court stated that "under the federal and New York State [anti-discrimination statutes] plaintiff must also show that the harassment was sufficiently severe or pervasive to alter the conditions of employment."  *Id*. at 725, 748-49.  However, the court went on to hold, "such a construct is inconsistent with the City's Human Rights Law" which only assesses the level of pervasiveness in determining damages rather than liability.  *Id*.  Accordingly, the court followed the NYCHRL standard and did not require proof demonstrating that the conduct was severe and pervasive.  *See also Sorrenti v. City of New York*, No. 02 cv 113037, 2007 NY Misc. LEXIS 6487 at *11 (N.Y. Sup. Ct. Aug. 16, 2007) (holding that retaliatory conduct did not have to be materially adverse to constitute retaliation under NYCHRL).

As the preceding line of cases amply demonstrates, courts have consistently found that the more liberal standards outlined in the NYCHRL could apply, even in those cases where, as

here, the NYCHRL was in direct conflict with the language used in federal and state laws.  Thus, even if New York State applied a different standard than "shocks the conscience" in the *Transit Authority* case, this state decisional law does not preempt the city's mandate, found within the text and legislative history of the Restoration Act, to apply a "shocks the conscience plus" standard of review for NYCHRL claims.  Accordingly, for all of the reasons set forth above, it is clear that the NYCHRL is not preempted by either state or federal law.

## CONCLUSION

As shown above, the proper standard of review for award of damages in this action is the "shocks the conscience plus" standard of the NYCHRL.  Accordingly, Plaintiff respectfully requests that the Court affirm the jury's award for compensatory and punitive damages in its entirety.


Dated:  New York, New York
        February 18, 2008


                        THOMPSON WIGDOR & GILLY LLP


                By:     _____
                        Kenneth P. Thompson (KT-6026)
                        Scott B. Gilly (SG-6861)
                        Kathryn J. Webber (KW-9576)

                        350 Fifth Avenue
                        Suite 5720
                        New York, New York 10118-0110
                        (212) 239-9292

                        Attorneys for Plaintiff